**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEADRILL PARTNERS LLC, *et al.*,[1] | ) | Case No. 20-35740 (DRJ) |
| Debtors. | ) | (Jointly Administered) |

**DECLARATION OF MOHSIN Y. MEGHJI,**
**CHIEF RESTRUCTURING OFFICER OF SEADRILL PARTNERS LLC,**
**IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, Mohsin Y. Meghji, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer of Seadrill Partners LLC ("SDLP"), a publicly traded limited liability company organized under the laws of the Republic of the Marshall Islands and one of the above-captioned debtors and debtors in possession (together with SDLP, collectively, the "Debtors" and, together with SDLP's direct and indirect non-Debtor subsidiaries, collectively, "SDLP Group").[2] I have served as the SDLP Group's Chief Restructuring Officer since October 22, 2020. I also am a Managing Partner of M-III Partners LP, which is providing restructuring advisory services to the Debtors.

2. As Chief Restructuring Officer, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/seadrillpartners. The location of Debtor Seadrill Partners LLC's principal place of business and the Debtors' service address in these chapter 11 cases is Seadrill Partners LLC, 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road, London W4 5YS, United Kingdom.

[2] The SDLP Group does not include Seadrill Limited, Seadrill Management Ltd. or their non-SDLP subsidiaries or affiliates.

knowledge of such matters from Debtors' employees or retained advisors that report to me in the ordinary course of my responsibilities. The Debtors have authorized me to submit this declaration (this "Declaration") on their behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. On December 1, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors have filed various motions and pleadings seeking certain "first day" relief (collectively, the "First Day Motions") to minimize any disruption that filing these chapter 11 cases may have on their businesses. I submit this Declaration to assist the Court and parties in interest in understanding the circumstances compelling the commencement of these chapter 11 cases and in support of the Debtors' chapter 11 petitions and First Day Motions filed contemporaneously herewith.

## Introduction

4. Headquartered in London, England, SDLP is a publicly traded Marshall Islands limited liability company formed in 2012 by Seadrill Limited to own and operate offshore drilling units.[3] Seadrill Limited continues to be SDLP's largest indirect equity holder,[4] and through its

[3] While the Debtors have operations in various parts of the globe, Debtor Seadrill Texas LLC is a limited liability company formed under the laws of the State of Texas and Debtor Seadrill Hungary Kft's primary asset—the *West Sirius*, a sixth generation ultra-deepwater semi-submersible drilling rig with operational history in the U.S. Gulf of Mexico—has been "cold stacked" in Port Aransas, Texas since the summer of 2015. Additionally, each of the Debtors has various forms of property located in the U.S., including in the form of U.S. bank accounts, contracts governed by the law of a U.S. state, and/or various professional fee retainers. Each of the Debtors is an affiliate of Seadrill Limited, which has a case pending before this Court.

[4] A chart summarizing the Debtors' corporate structure is attached hereto as Exhibit A. As of the Petition Date, Seadrill Limited owns 35 percent of the outstanding common units of SDLP, 100 percent of its subordinated units, and, through non-Debtor Seadrill Member LLC, all of SDLP's incentive distribution rights. Additionally, Seadrill Limited holds indirect equity interests in three Debtors: (a) a 49 percent equity interest in Seadrill Mobile Units Ltd., a Nigerian entity; (b) a 49 percent equity interest in Seadrill Capricorn Holdings LLC, a Marshall Islands company and obligor under the Term Loan B facility; and (c) a 42 percent equity interest in Seadrill

subsidiary, non-Debtor affiliate Seadrill Management Ltd., Seadrill Limited provides the Debtors with managerial, administrative, financial, and other support services (including oversight of the Debtors' cash management system) and personnel pursuant to the Amended and Restated Management and Administrative Services Agreement, dated as of September 11, 2017 and related agreements with Debtor operating companies (the "MSA").[5] Together, SDLP, Seadrill Limited, and their respective affiliated entities collectively operate one of the world's largest offshore drilling enterprises, and their customers (typically referred to as "operators") include super-major and major oil and gas companies, state-owned national oil companies, and local independent offshore exploration and production companies.

5. In 2017, Seadrill Limited and 85 affiliated entities consummated a prearranged chapter 11 restructuring in this Court that, among other things, restructured approximately $6 billion in secured indebtedness, eliminated approximately $3.5 billion of unsecured bond and contractual obligations, and facilitated a new money investment of $1 billion.[6] Although part of the broader Seadrill enterprise, the SDLP Group did not pursue an in-court restructuring in 2017; however, the SDLP Group did effectuate around the same time, and has since effectuated, a number of out-of-court liability management transactions designed to provide the SDLP Group with greater financial flexibility regarding its funded debt obligations.

---

Operating LP, a Marshall Islands limited partnership and obligor under the Term Loan B facility. Additionally, Seadrill Limited owns approximately 39 percent of the equity interests of Debtor Seadrill Deepwater Drillship Limited, a Cayman Islands company and obligor under the Term Loan B facility.

5 In addition, certain of the SDLP's Debtor and non-Debtor subsidiaries are party to similar management and administrative agreements with Seadrill Management Ltd.

6 Seadrill Limited and its debtor affiliates' chapter 11 cases were jointly administered under the caption *In re Seadrill Limited, et al.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex.).

6. These efforts notwithstanding, since 2017, the SDLP Group has faced an onslaught of negative macroeconomic trends, including reduced upstream capital expenditures, a surplus in supply, and increased price competition. In response, SDLP and its seven-member Board of Directors have proactively sought to address the SDLP Group's capital structure challenges. Additionally, SDLP, through the four-member Conflicts Committee of its Board of Directors (the "Conflicts Committee"), has focused on several key conflicts issues, including the potential to restructure and/or replace the management services agreements with Seadrill Limited to best maximize value. To that end, the Conflicts Committee has retained Evercore Group, L.L.C. ("Evercore") as its independent financial adviser and Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") as its independent legal counsel.

7. Since the summer of 2020, the Debtors have preserved liquidity in anticipation of a holistic balance-sheet restructuring in conjunction with the Strategic Process (as defined below). For example, as described below, the Debtors executed two amendments to the Debtors' Term Loan B facility that preserved more than $100 million of cash-interest expense and, most recently, the Debtors elected not to make a periodic payment with respect to certain swap obligations.[7]

8. In connection with the Term Loan B amendments, the Conflicts Committee (together with Evercore and Sheppard Mullin) commenced a strategic process by which it solicited third party interest to (a) enter into a new management and administrative services agreement with the Debtors with respect to one or more of their vessels and/or (b) participate in a merger or acquisition transaction involving the Debtors (collectively, the "Strategic Process"). The goal of the Strategic Process is to maximize the Debtors' value for the benefit their stakeholders, with a

[7] *See* SDLP – Announces Forbearance Agreement Relating to Swap Payments, November 25, 2020, https://seadrillpartners.com/investor-relations/news-releases/detail/?id=3F0D58D3A9A90B17

view to facilitating further discussion and negotiation surrounding the Debtors' balance-sheet restructuring.

9. The Debtors, led by the Conflicts Committee, sought to use the Strategic Process to forge consensus with the Debtors' Term Loan B lenders regarding a balance-sheet restructuring that would equitize all of the Term Loan B lenders' claims through a scheme of arrangement or prearranged chapter 11 process. At the same time, the Conflicts Committee engaged with Seadrill Limited to investigate and review potential claims by the Debtors against Seadrill Limited.

10. On November 25, 2020, Seadrill Limited—without prior notice to SDLP—exercised certain purported rights under the MSA to settle approximately $24 million in various claims, which was $19.4 million in excess of the $4.8 million authorized by the Conflicts Committee. Thereafter, the Conflicts Committee assessed Seadrill Limited's actions and sought to chart a path forward to maximize the value of the Debtors in light of numerous considerations. Among other things, the Conflicts Committee: (a) conferred with the Debtors' management team and the Conflicts Committee's independent advisors; (b) engaged with the advisors to an ad hoc group of Term Loan B lenders (the "Ad Hoc Group") regarding the situation; (c) considered the effect of Seadrill Limited's actions or potential actions on its operations, customers, and employees; and (d) engaged with independent counsel regarding potential legal recourse.

11. Following several days of review and numerous formal and informal meetings, both at the Conflicts Committee level and at the Board level, the Debtors determined that it was prudent to commence these cases to ensure that no additional settlements occurred by Seadrill Limited and to use the chapter 11 process to maximize the value of the Debtors' enterprise for the benefit of all stakeholders. In conjunction with their decision to commence these cases, the Debtors negotiated

with the Ad Hoc Group for consensual use of cash collateral. As part of that agreement, the Debtors will complete the Strategic Process, the outcome of which the Debtors anticipate will serve as the foundation for a plan of reorganization that addresses the Debtors' over-leveraged balance sheet and an expeditious exit from chapter 11.

12. To familiarize the Court with the Debtors, their business, the circumstances leading to these chapter 11 cases, and the relief the Debtors are seeking in the First Day Motions, I have organized this declaration as follows: ***first***, a general overview of the Debtors' corporate history, business operations, and assets; ***second***, an overview of the Debtors' prepetition capital structure; ***third***, a description of the Debtors' goals for these chapter 11 cases; and ***finally***, a summary of the evidentiary support for the First Day Motions.

## The Debtors' History, Operations, and Assets

### I. The SDLP Group's Corporate History and Structure.

13. Seadrill Limited formed SDLP in the summer of 2012 with an initial fleet of 4 units on long term contracts. During the years following its formation, the SDLP Group capitalized on strong demand for offshore drilling equipment and services, driven by a favorable oil pricing environment, and acquired an additional 7 units with long term contracts from Seadrill Limited, actively expanding its fleet geographic footprint, and contracted backlog.

14. Today, the SDLP Group's fleet consists of four (4) drillships, four (4) semi-submersible rigs, and three (3) tender rigs, three (3) of which are on contract. The fleet remains one of the youngest and most modern among major offshore drilling contractors, with an average fleet age of approximately 8.5 years, compared to up to 20 years in the case of its major competitors' rigs. The SDLP Group's rigs are located in Aruba, Canada, the U.S. Gulf of Mexico, Malaysia, Norway, Southern Asia, and Singapore. The SDLP Group contracts with vendors and customers across the globe to provide drilling services, in both benign and harsh operating

environments from shallow to ultra-deepwater. The Debtors derive the majority of their revenues and cash flow from a small number of customers.

15. As noted above, pursuant to the MSA, certain Seadrill Limited subsidiaries provide managerial, administrative, financial, operational, and other support services and personnel to the SDLP Group. Through these arrangements, hundreds of highly-skilled individuals located across five continents serve on the SDLP Group's offshore drilling units and onshore operations in technical, commercial, and administrative functions. As the Debtors have limited employees of their own and none in a managerial, administrative or oversight role (other than SDLP's Chief Executive Officer and Director of Finance), the skills and knowledge of Seadrill Limited's and its affiliates' employee base (provided under the MSA) are essential to preserving operational stability, safety, and efficiency, which are in turn necessary to maximize value over the course of these chapter 11 cases.

## The Debtors' Capital Structure and Indebtedness

16. As of the Petition Date, the Debtors had approximately $2.7 billion in aggregate funded-debt obligations. These obligations comprise three tranches of debt, under which certain Debtors are either borrowers or guarantors (collectively, the "Debtor Loan Parties"). The table below summarizes the Debtor Loan Parties' prepetition capital structure.

| **Debt** *(in US$ millions)* | **Approximate Principal Outstanding** |
|---|---|
| Term Loan B – Super Senior Loan Due February 2021 | $63.9 |
| Term Loan B – Super Senior Loan Due February 2021 | $64.4 |
| Term Loan B Credit Facility Due February 2021 | $2,585.5 |
| Swap Liability | $20.8 |
| **Total Obligations Outstanding** | **$2,734.6** |

**I. Term Loan B and the Prior Vessel Facility Loans.**

17. On February 21, 2014, that certain Credit Agreement (as amended, the "Term Loan B Credit Agreement"), was entered into by and among Seadrill LP, Seadrill Capricorn, and Seadrill Finco, as borrowers, certain of the Debtors as guarantors, Deutsche Bank AG New York Branch, as agent, and the lender parties thereto (the "Term Loan B Lenders"). The Term Loan B Credit Agreement is governed by New York law.

18. On July 30, 2020, the parties executed an amendment to the Term Loan B Credit Agreement, which provided approximately $63.7 million in super senior revolving loans on a cashless basis in lieu of receipt of cash interest with respect to the interest payment due and payable on June 30, 2020. On October 30, 2020, the parties executed an amendment to provide approximately $63.3 million in super senior revolving loans on a cashless basis in lieu of receipt of cash interest with respect to the interest payment due and payable on September 30, 2020 (together with the July 30, 2020, super senior loans, the "Super Senior Term Loans"). The Term Loan B Credit Agreement is subject to annual amortization payments of approximately $29.0 million, payable in quarterly installments, with the balance of the loan then coming due in 2021. As of the Petition Date, the Debtor Loan Parties have approximately approximately $2.7 billion outstanding under the Term Loan B Credit Agreement.

19. On July 31, 2020, in connection with the July 30, 2020 Term Loan B Credit Agreement amendment, that certain Senior Secured Credit Facility Agreement, by and among Seadrill Vela Hungary Kft, as borrower, SDLP, as parent, and certain Debtors as guarantors, ING Bank N.V., as agent, and the lender parties thereto was terminated.

20. On July 31, 2020, in connection with the July 30, 2020 Term Loan B Credit Agreement amendment, that certain Term Loan and Revolving Credit Facilities Agreement, by and among Seadrill Polaris Ltd., as borrower, SDLP, as parent, and certain Debtors as guarantors,

DNB Bank ASA, as agent, and the lender parties thereto was terminated. In 2019, the Ad Hoc Group retained Milbank LLP as counsel, Intrepid Financial Partners as operational adviser, and Rothschild and Co. as financial adviser to facilitate restructuring negotiations. The Ad Hoc Group's advisors entered into non-disclosure agreements with SDLP in November 2019.

**II. Swap Liabilities.**

21. The majority of the Debtor Loan Parties' debt arrangements have floating interest rates. As such, significant movements in interest rates could have an adverse effect on earnings and cash flow. To manage the Debtor Loan Parties' exposure to interest rate fluctuations, the Debtor Loan Parties use interest rate swaps to effectively fix a part of their floating rate debt obligations (collectively, the "Interest Rate Swaps"). As of the Petition Date, the Debtor Loan Parties had Interest Rate Swaps for a combined outstanding principal amount of approximately $2.7 billion. The fair value of the Interest Rate Swaps outstanding as of the Petition Date was a liability of approximately $20.8 million. The Interest Rate Swaps are junior in right of payment to the Super Senior Term Loans, but otherwise rank *pari passu* with the other obligations under the TLB Credit Agreement.

22. On November 23, 2020, SDLP elected not to make a periodic payment due on the Interest Rate Swaps obligations in connection with its entry into a forbearance agreement with holders of a majority of the obligations under the Term Loan B Credit Agreement. Under that forbearance agreement, the parties agreed to forbear from enforcing any "claims, causes of action, rights, or remedies" with respect to any default that may occur under the Term Loan B Credit Agreement as a result of the swap obligations-related non-payment.

**III. Unsecured Indebtedness**

23. In addition to its secured debt, SDLP has approximately $95 million in unsecured debt incurred in the normal course of business. This comprises approximately $56 million of

contract payables to related parties, approximately $8 million related to a prior royalty settlement, approximately $5 million on account of an earn-out related to Seadrill Capricorn Holdings LLC's acquisition from Seadrill Limited of all of the ownership interests in the entities that own and operate the drillship *West Vela*, and approximately $14 million in trade payables, and other liabilities in the approximate amount of $13 million.

**IV. Publicly-Traded Common Units.**

24. As a publicly-held Marshall Islands limited liability partnership, SDLP issues two classes of stock: "common units" and "subordinated units." On December 11, 2019, SDLP's common units were delisted and deregistered from the NYSE as a result of the Company's low-market capitalization. Since then, SDLP's common units have traded on the OTCQB, an over-the-counter market significantly more limited than the NYSE, under the symbol "SDLPF." As of the Petition Date, Seadrill Limited owns 35 percent of the outstanding common units of SDLP and 100 percent of SDLP's subordinated units.[8]

**<u>The Debtors' Goals for These Chapter 11 Cases</u>**

25. The Debtors intend to use the chapter 11 process to preserve value and continue the operation and marketing of its assets. More specifically, the Debtors intend in the coming weeks to continue to engage with the Ad Hoc Group regarding the terms of a holistic restructuring to right-size the Debtors' balance sheet, all while continuing to operate as a going concern, protecting their valuable customer relationships and ensuring that all customer, vendor, and employee

---

[8] Seadrill Limited holds approximately 39 percent of the equity interests of Debtor Seadrill Deepwater Drillship Limited, a Cayman Islands company and obligor under the Term Loan B facility. Additionally, Seadrill Limited holds indirect equity interests in three Debtors: (a) a 49 percent equity interest in Seadrill Mobile Units Ltd., a Nigerian entity; (b) a 49 percent equity interest in Seadrill Capricorn Holdings LLC, a Marshall Islands company and obligor under the Term Loan B facility; and (c) a 42 percent equity interest in Seadrill Operating LP, a Marshall Islands limited partnership and obligor under the Term Loan B facility. Additionally, Seadrill Partners LLC Holdco Limited holds a 42 percent interest in Seadrill Operating LP.

obligations are met without interruption. A critical path issue for the Debtors to propose and confirm a value-maximizing chapter 11 plan is for the Conflicts Committee to identify and select a go-forward service provider. Accordingly, the Debtors, through the Conflicts Committee and with the assistance of Evercore, anticipate completing the ongoing marketing process in the next 30 days and thereafter seeking to confirm a plan of reorganization.

26. The Debtors have already begun to engage with the Ad Hoc Group regarding a path forward that maximizes stakeholder value. Those productive discussions have resulted in an agreement to permit the Debtors to access cash collateral on a ***fully consensual basis***. That consent—the terms of which are further detailed in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash and Cash Collateral, (II) Granting Adequate Protection to the TLB Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed in connection herewith—is predicated on the following restructuring milestones:

- No later than 45 calendar days after the Petition Date, the Debtors shall have filed a chapter 11 plan in form and substance acceptable to the Ad Hoc Group and Alter Domus (US) LLC, as administrative agent, collateral agent, and security trustee (in such capacities, the "TLB Agent") to the lenders party to the Term Loan B Credit Agreement (with respect to provisions regarding the TLB Agent) (an "Acceptable Plan") and a disclosure statement in respect of the Acceptable Plan, including all exhibits and schedules thereto, in each case, in form and substance acceptable to the Ad Hoc Group and TLB Agent (with respect to provisions regarding the TLB Agent);

- No later than 45 calendar days after the Petition Date, the Debtors shall have executed an agreement or agreements (which such agreement or agreements shall be approved by the Court within 80 days of the Petition Date) governing the operation of the Debtors' vessels following the effective date of the Debtors' chapter 11 plan (the "New MSA(s)"), which such New MSA(s) shall be acceptable to the Ad Hoc Group;

- No later than 60 calendar days after the Petition Date, the Debtors and the Ad Hoc Group shall have agreed on a schedule of executory contracts to be assumed or rejected by the Debtors and, within 30 days thereafter, the Court shall have approved the rejection or assumption of such executory contracts effective as of such date(s) to be agreed by the

Debtors and the Ad Hoc Group, which such dates shall be prior to or contemporaneous with the confirmation of an Acceptable Plan (as defined below);

- No later than 95 calendar days after the Petition Date, all matters relating to onboarding the counterparties to the New MSA(s) shall be substantially complete;

- No later than 105 days after the Petition Date, the effective date(s) of the New MSA(s) shall have occurred; and

- No later than 135 days after the Petition Date, the effective date of the Acceptable Plan shall occurred; *provided*, that, to the extent any necessary regulatory approvals remain pending at that time, this date may be extended to the date that is five (5) business days after obtaining such approvals if such extension is acceptable to members of the TLB Ad Hoc Committee representing Required Lenders in writing, which may be conveyed by email.

27. The Debtors look forward to continuing to engage with their stakeholders (including any statutory committees) to build consensus for the RSA and the Plan and move rapidly towards confirmation of a largely-consensual financial restructuring that will right-size the Debtors' balance sheet and position the reorganized Debtors for long-term success.

## Evidentiary Support for the First Day Motions

28. To minimize any disruption resulting from the filing of these chapter 11 cases as well as other possible adverse effects on their businesses, the Debtors have filed contemporaneously herewith various First Day Motions seeking certain relief. The First Day Motions include:

- *Debtors' Emergency Motion Seeking Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief;*

- *Debtors' Emergency Application for Entry of an Order Authorizing the Employment and Retention of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent;*

- *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Waiving the Requirement to File A List of Equity Security Holders, (III) Authorizing the Debtors to Redact Certain Personal Identification Information, and (IV) Granting Related Relief;*

- *Debtors' Emergency Motion for Entry of an Order (I) Extending Time to File Schedules of (A) Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (E) Rule 2015.3 Financial Reports and (II) Granting Related Relief;*

- *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions and (II) Granting Related Relief;*

- *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash and Cash Collateral, (II) Granting Adequate Protection to the TLB Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief;*

- *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Specified Operational Claims, (II) Confirming Administrative Expensive Priority of Outstanding Purchase Orders, and (III) Granting Related Relief;* and

- *Debtors' Emergency Motion Seeking Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provision, and Ispo Facto Protections of the Bankruptcy Code, (II) Permitting the Debtors to Modify the Automatic Stay in their Sole Discretion to Proceed with Litigation or Contested Matters Commenced Prepetition, (III) Approving the Form and Manner of Notice, and (IV) Granting Related Relief.*

29. I have reviewed and am familiar with the content of each of the First Day Motions. The First Day Motions seek authority to, among other things, continue use of cash collateral on an interim basis, honor employee-related wages and benefits obligations, and ensure the continuation of the Debtors' cash management systems and other business operations without interruption. I believe that the relief requested in the First Day Motions is necessary to give the Debtors an opportunity to work toward successful chapter 11 cases—with minimal disruption to the Debtors' operations—that will benefit all of the Debtors' stakeholders.

30. Several of the First Day Motions request authority to pay certain prepetition claims. I understand that rule 6003 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first 21 days

following the filing of a chapter 11 petition, "except to the extent relief is necessary to avoid immediate and irreparable harm." In light of this requirement, the Debtors have narrowly tailored their requests for immediate authority to pay certain prepetition claims in those circumstances where the failure to pay such claims would cause immediate and irreparable harm to the Debtors and their estates. Other relief will be deferred for consideration at a later hearing.

31. I am familiar with the content and substance of the First Day Motions. Based on my knowledge, after reasonable inquiry, I believe approval of the relief sought therein (a) is necessary to enable the Debtors to transition into, and operate efficiently and successfully in, chapter 11 with minimal disruption or loss of productivity and value, (b) is critical to the Debtors' achieving a successful restructuring, and (c) is in the best interest of the Debtors' estates and their stakeholders. I believe the relief requested therein is necessary to allow the Debtors to operate with minimal disruption while these chapter 11 cases are pending and to preserve the value of their assets for the benefit of their stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 4, 2020

*/s/ Mohsin Y. Meghji*
Mohsin Y. Meghji
Chief Restructuring Officer
Seadrill Partners LLC

# **Exhibit A**

## **Corporate Structure Chart**

| Debt (*in US$ millions*) | Approximate Principal Outstanding |
|---|---|
| Term Loan B – Super Senior Loan Due February 2021 | $63.9 |
| Term Loan B – Super Senior Loan Due February 2021 | $64.4 |
| Term Loan B Credit Facility Due February 2021 | $2,585.5 |
| Swap Liability | $20.8 |
| **Total Obligations Outstanding** | **$2,734.6** |

| 100% Wholly-Owned Subsidiary Obligors Under Term Loan B |
|---|
| Seadrill T-5 Ltd. |
| Seadrill T-16 Ltd. |
| Seadrill International Ltd. |
| Seadrill Operating LP |
| Seadrill Deepwater Drillship Ltd. |
| Seadrill OPCO Sub LLC |
| Seadrill Partners Finco LLC |
| Seadrill Vencedor Ltd. |
| Seadrill Leo Ltd. |
| Seadrill Ghana Operations Ltd. |
| Seadrill Polaris Ltd. |
| Seadrill Canada Ltd. |
| Seadrill China Operations Ltd. |
| Seadrill Capricorn Holdings LLC |
| Seadrill Gulf Operations Auriga LLC |
| Seadrill Gulf Operations Sirius LLC |
| Seadrill Auriga Hungary Kft. |
| Seadrill Hungary Kft. |
| Seadrill US Gulf LLC |
| Seabras Rig HoldCo Kft. |
| Seadrill Gulf Operations Vela LLC |
| Seadrill Vela Hungary Kft. |

