IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER |
| | § | |
| **SEADRILL PARTNERS, LLC, et al** | § | **20-35740-H2-11** |
| | § | |
| REORGANIZED DEBTORS | § | CHAPTER 11 |
| | § | (Jointly Administered) |

**FIRST AMENDED MOTION FOR
ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM
PURSUANT TO 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**There will be a hearing on this motion on March 21, 2022 at 9:00 a.m. in Courtroom 400, 4th Floor, 515 Rusk, Houston, TX 77002.**

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

CleanBlast, LLC ("Claimant," "Movant" or "CleanBlast") files its Motion for Allowance of Administrative Expense Claim pursuant to 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2) (the "Motion") and in support thereof would show the Court, as follows:

**Overview**

1.   CleanBlast is a supplier of sandblasting and painting equipment, materials, supplies and labor, collectively called "Services." CleanBlast has been providing its services to the Debtor

1

for the past ten (10) years.

2. Seadrill Partners, LLC ("Debtor," "Respondent" or "Seadrill") is engaged in the business of supplying drilling and related services utilizing drilling rigs and/or drill ships to the oil and gas industry.

3. CleanBlast entered into a Master Servicing Agreement (the "MSA") with Seadrill Americas, Inc. for services to be performed for Seadrill, its parent, holding or affiliated companies. The purpose of the MSA was to provide a framework for CleanBlast to provide Services to Seadrill and its affiliates and subsidiaries pursuant to work tickets ("Work Orders") that CleanBlast entered into with Seadrill daily. All Work Orders were approved and signed by a representative of Seadrill. A copy of the MSA is attached hereto, marked Exhibit 1 and made a part hereof for all purposes.

4. On December 1, 2020 (the "Petition Date"), Seadrill filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). Twenty-eight (28) other companies related to Seadrill Partners, LLC also filed for protection under Chapter 11 and all are jointly administrated under Case #20-35740; *In re: Sandrill Partners, LLC*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

5. Beginning pre-petition and continuing post-petition, CleanBlast provided its Services to one or more of the Debtors, primarily Seadrill Gulf Operations Auriga, LLC. Debtor's representatives executed daily Work Orders, itemizing and approving of Claimant's services for maintenance on Debtor's drill ships and other properties. At the specific request of the

2

Debtor, CleanBlast performed its services for Debtor from November 4, 2020 through December 16, 2020, and incurred actual and necessary costs of preserving and benefitting the estate.

6. After Seadrill filed Chapter 11, CleanBlast became worried that it would not be paid for its Services. Seadrill representatives, however, continued to assure CleanBlast, verbally and in writing, that it would be paid for it's Services after the Petition Date. Only upon those representations did CleanBlast continue to provide Services to Seadrill.

7. On December 21, 2020, CleanBlast sent Debtor Invoice #42128 in the amount of $105,106.88 for services rendered from November 4, 2020 through December 16, 2020. In response to that invoice, on January 21, 2021, Debtor paid CleanBlast $44,528.86, leaving a balance of $60,678.02. Once Seadrill paid CleanBlast Invoice #42128, post-petition, CleanBlast thought that everything was authorized to continue to pay CleanBlast for its Services.

8. The purpose of this Motion is to request allowance of administrative expense priority claims in the net amount of at least $29,048.18 pursuant to 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2) of the Bankruptcy Code for the unpaid pre-petition and post-petition amounts incurred and invoiced by CleanBlast pursuant to the terms of the MSA and post-petition Work Orders for actual and necessary costs of preserving the estate.

9. In support of the Motion, CleanBlast has attached true and correct copies of the following:

   a. CleanBlast Master Service Agreement (Bates Numbers: 000001 - 000029) as Exhibit 1.

   b. CleanBlast Work Order Tickets - November 4, 2020 through December 16, 2020

    (Bates Numbers: 000001 - 000043) as Exhibit 2.

  c. PPG Protective Marine Coatings Paint Order Sheet - November 11, 2020 (Bates Numbers: 000001-000003) as Exhibit 3.

  d. D & R Supply Invoice #696636 - December 1, 2020 and CleanBlast Back Charge Ticket dated December 21, 2020 - (Bates Numbers: 000001 - 000002) as Exhibit 4.

  e. CleanBlast Invoice #42128-R2 - December 21, 2020 - (Bates Number: 000001) as Exhibit 5.

  f. CleanBlast Payment History Detail, showing payment of $44,528.86 - (Bates Number: 000001) as Exhibit 6.

  g. CleanBlast Invoice Summary (Bates Number: 000001) as Exhibit 7.

10. CleanBlast's claim for the unpaid value of goods received by the Debtor within 20 days before the Petition Date (November 10, 2020 through November 30, 2020) and supplied by CleanBlast in the ordinary course of business are entitled to administrative expense priority under §503(b)(9). This is an amount equal to at least $40,329.92.

11. CleanBlast's claim for unpaid services, equipment, labor and material, supplied by CleanBlast to Debtor from the Petition Date through December 16, 2020, are entitled to administrative expense priority under §§503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code as actual and necessary costs of preserving the estate. This is an amount equal to at least $33,247.12.

12. CleanBlast requests allowance of administrative claims which currently total $29,048.18[1], plus any applicable post-petition third-party re-bill charges, less any payments received.

---

[1] ($40,329.92+$33,247.12) - $44,528.86 = $29,048.18.

CleanBlast reserves its right to supplement this Motion to include any additional charge relating to CleanBlast's claims, including any additional third-party charges or re-bill amounts.

13. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

14. CleanBlast seeks allowance of two administrative claims. First, CleanBlast seeks an order allowing a pre-petition administration claim in an amount not less than $40,329.92. 11 U.S.C. §§ 503(b)(9). Second, CleanBlast requests an order allowing its claim for the unpaid services and equipment provided post-petition as an administrative expense priority claim in the amount of $33,247.12 under 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2). After applying the payment made by Debtor on January 21, 2021, in the amount of $44,528.86, CleanBlast seeks an order allowing its pre-petition and post-petition unpaid claims as administrative claims in the net amount of at least $29,048.18.

## Legal Standard

15. The Bankruptcy Code provides that requests for payment of administrative expenses be filed in a timely manner, but the bankruptcy court is authorized to accept a tardy request, within its discretion, "for cause." 11 U.S.C.§503(a). *Matter of DP Partners Ltd. Partnership*, 106 F.3d 667 (5th Cir. 1997). The standard for determining whether "cause" exists is based upon "exclusable neglect." The leading decision on the application of "excusable neglect" standards is the decision of the United States Supreme Court in *Pioneer Inv. Servs. v.*

*Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer*, an attorney filed a claim twenty days after the bar date. The attorney claimed that he had been experiencing a major and significant disruption in his life due to his withdrawal from his former law firm, and that he was unaware of the bar date until after the bar date had passed. The Supreme Court held that the wording of Rule 9006 shows that relief may be available even if a deadline is missed due to neglect, which includes instances in which deadlines are missed due to carelessness or inattentiveness. It further held that for this purpose, the term "neglect" encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. at 388. The Supreme Court also held that the determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. The relevant factors include: (1) the danger of prejudice; (2) the length of the delay and its potential impact on proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id*. at 396-97.

16. The purpose of 11 U.S.C. §503 is to allow debtor's business to operate for the benefit of pre-petition creditors by encouraging third parties to continue to deal the debtor.

17. Most administrative expenses have two elements: (1) a post-petition transaction with the estate, and (2) consideration supporting the right to payment of administrative expenses that will normally benefit the estate.

18. A claimant bears the burden of demonstrating to the Court's satisfaction that the elements of an administration expense have been satisfied. *In re: Mid Region Petroleum, Inc*. 1 F.3d

1130, 1132 (10th Cir. 1993).

## Argument and Authorities

19. CLEANBLAST HAS CAUSE TO FILE THE MOTION UNTIMELY.

   a. CleanBlast admits that it did not file the Motion in a timely manner pursuant to the Confirmed Chapter 11 Plan. However, it should be entitled to file it now for cause shown. 11 U.S.C.§503(a). Movant was not aware of those bar dates, nor was it aware that it even had to file the Motion. Movant had been providing services for the Debtors for over 10 years prior to the Petition Date. Debtors, primarily Seadrill Gulf Operations Auriga, LLC, executed many Work Orders (both pre-petition and post-petition) for CleanBlast to provide labor, equipment and materials for sandblasting, painting and related services for maintenance on Debtor's oil rigs and other properties. More specifically, Movant performed work for Debtor in November 2020, and continued to work for the Debtor after the filing date, incurring actual and necessary costs of preserving and benefitting the estate. Debtor's representatives signed post-petition Work Orders and induced CleanBlast to continue working for Debtor. Moreover, the Debtor paid Movant $44,528.86 on or about January 21, 2021, and represented to Movant that it intended to pay all of Movant's invoices in full after the filing date. Based upon Debtor's representations and the signed Work Orders, Movant continued to perform post-petition work that benefitted the Debtor.

   b. Movant was incorrectly listed in schedule E/F of ECF#199 at page 25 of 33. First, ECF#199 at paragraph 3.1, the entire balance of $73,188,632.84 is not marked contingent on the official form and as such, has an allowed claim. Secondly, Debtor

        mistakenly scheduled Movant, a trade creditor, as having a contingent claim on its attachment to the official form at ECF#199 page 26 of 33. Claims of trade creditors are not contingent.[2] The marking for "contingent" is in such small type, one has to have a magnifying glass to even see it. This is improper, as well as, confusing. More importantly, because Movant does not have a contingent claim, as Movant would assert, it has an allowed claim pursuant to the language of the confirmed plan. See ECF#562 at pages 6-7 of 52.[3]

c.     Finally, pursuant to Debtor's Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates "no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously allowed." See ECF#586 at pages 2-3 of 6.

d.     There is no danger of prejudice to allow CleanBlast's administrative claims. Debtor has already paid Movant the sum of $44,528.86, so Seadrill recognizes that CleanBlast has provided equipment and labor beneficial to the Estate. The length of delay is not extraordinary - slightly over 5 months. CleanBlast first raised the issue of its administrative claim in it's response to The Reorganized Debtors' Third

---

[2] *In re: All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D.Tex. 1980); *In re: Marvellia*, 149 B.R. 301, 304 (Bankr. E.D.N.Y. 1991); *In re: HL Builders, LLC*, 2020 WL 833287, *10 (Bankr. S.D. Tex. 2020).

[3] ""Allowed" means, with respect to any (a) Claim or portion thereof . . . that is listed in the Schedules as not contingent, not unliquidated, and not disputed (to the extent it has been listed), and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed, . . . ."

8

Omnibus Objection to Certain Proofs of Claim (Late-Filed Claims).[4] The reason for the delay, as explained herein, is Debtor's inducement and continued representations to CleanBlast that it would be paid in full. Finally, CleanBlast has certainly acted in good faith. It continued to supply Debtor with equipment and labor, while being lead on by Debtor's representatives. CleanBlast was promised that it would receive payment for all of its outstanding invoices totaling $105,106.88. Debtor paid CleanBlast a partial payment of $44,528.86, leaving a balance due of $60,678.02. Had CleanBlast realized that it was not going to receive payment for 100% of its invoices, it would have never continued to work for Debtor.

20. CLEANBLAST HAS AN ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C.§503(b)(9).

    a. CleanBlast's unpaid pre-petition charges for goods received by the Debtor within 20 days before the Petition Date arose pursuant to the MSA[5] and from pre-petition Work Orders[6] approved by Seadrill representatives that provided an actual and necessary benefit to the Debtor's estate. As such, the unpaid charges qualify as administrative expense claims entitled to priority under §503(b)(9). The attached Exhibit 2 sets forth the Work Orders, dating from November 14, 2020, through December 16, 2021, which were approved by Debtor's representatives, to induce CleanBlast to work for Debtor. Those Work Orders are individual sheets of paper, which are divided with

---

[4] ECF#723.

[5] See Exhibit 1 - Master Service Agreement.

[6] See Exhibit 2 - Work Order Tickets.

the labor charges at the top half of the Work Order and the equipment and consumables ("goods") on the bottom half. As the terms "goods" is not defined in the Bankruptcy Code, courts have adopted the definition under the Uniform Commercial Code.[7] The total value of the equipment or goods received by the Debtor within 20 days of the Petition Date is $40,329.92.[8]

21. CLEANBLAST HAS AN ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C.§503(b)(1)(A).

   a. CleanBlast's unpaid post-petition charges for equipment, labor and materials, arose pursuant to the MSA and pre-petition Work Orders approved by Seadrill representatives that provided an actual and necessary benefit to the Debtor's estate. The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" are allowable as administrative expenses and entitled to priority. 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2). The total amount due for the post-petition administrative claim is $33,247.12, after applying several credits for equipment downtime, beyond Movant's control.

   b. Most administrative expenses have two elements: (1) a post-petition transaction with the estate, and (2) consideration supporting the right to payment of administrative expenses that will normally benefit the estate.

      i. Without a doubt, CleanBlast has a post-petition transaction with the Estate.[9]

---

[7]*In re: Great Atlantic & Pacific Tea, Inc.*, 498 B.R. 19, 25-26, (S.D.N.Y. 2013).

[8]See Exhibit 7 - Invoice Summary, highlighted in gold.

[9]See Exhibit 2 - CleanBlast Work Order Tickets.

        The services provided by CleanBlast on a post-petition basis were identical to those provided by CleanBlast on a pre-petition basis. The Debtor recognized this benefit on a pre-petition basis and paid CleanBlast $44,528.86 against its Invoice #42128-R2.[10] Furthermore, the Debtor specifically requested that CleanBlast continue its services on a post-petition basis. The Work Orders were all approved by Debtor's representatives. Additionally, the Debtor's representatives continued to induce CleanBlast to maintain its services post-petition by promising the Movant that it would receive all of its outstanding invoices. The Fifth Circuit recently held that a creditor can establish that its expenses are attributable to the action of the bankruptcy estate through evidence of either a direct request from the debtor-in-possession or other inducement via the knowing and voluntary post-petition acceptance of desired good or services.[11]

  ii.    The services provided by CleanBlast benefitted the Estate. The services provided by CleanBlast allowed Debtor to continue its business as usual. The second element "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)." *Whistler Energy II*, 931 F.3d at 443 (quoting *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)). "A benefit to the estate can come in different forms." *Id.*

---

[10]See Exhibit 5 - CleanBlast Invoice #42128-R2.

[11]*Matter of Whistler Energy II, LLC*, 931 F.3d 432, 443 (5th Cir. 2019).

"Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id*. (quoting *H.L.S. Energy*, 151 F.3d at 1420).[12] Seadrill continued to operate its drilling vessels partially through the use of CleanBlast's services, therefore it benefitted from the post-petition services.

## **Prayer**

22. CleanBlast requests that the Court conduct a hearing on and determine the allowance of CleanBlast's administrative claims; award CleanBlast an allowed administrative expense claim, for both pre-petition and post-petition services, pursuant to Section 503(b) of the Bankruptcy Code, for the unpaid services and equipment supplied by CleanBlast pursuant to the MSA, together with any additional post-petition Work Orders; and for such other relief, at law or in equity, for which CleanBlast shows itself justly entitled.

---

[12]"*Whistler Energy II*, 931 F.3d at 443 (quoting *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)), (quoting *H.L.S. Energy*, 151 F.3d at 1420). "When certain goods or services will benefit the bankruptcy estate, administrative priority enables the debtor-in-possession to transact for that benefit in the same manner as a solvent enterprise. ***This requires paying the full and ordinary cost of such goods and services, including overhead and incidental expenses.*** Absent full payment, creditors would have little incentive to do business with the debtor-in-possession. If a debtor-in-possession decides to rent equipment for its business, for example, it cannot later evade those rental payments by asserting that it did not end up needing the equipment at all." *See* [*In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1510 (11th Cir. 1985)]…; *Kimzey v. Premium Casing Equip., LLC*, No. 16-1490, 2018 WL 132191, at *7 (W.D. La. March 14, 2018)…. Nor can a debtor-in-possession "argue that a specific line item expense that goes into providing a service did not directly benefit the estate." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 WL 1047818, at *9 (Bankr. S.D. Tex. March 18, 2014). *Whistler Energy II*, 931 F.3d at 434 – 44. (emphasis added).

Dated:  February 19, 2022.

                        Respectfully Submitted,

                        */s/ H. Brad Parker*

                        H. Brad Parker, TBN 15487100

                        H. Brad Parker, P.C.

                        700 Louisiana, Suite 3950

                        Houston, TX 77002-2859

                        Telephone: (832) 390.2690

                        Alt. Telephone: (713) 892.5588

                        bparker@parkerlawpc.com

                        Attorney for CleanBlast

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2022, a true and correct copy of CleanBlast's Motion for Allowance of Administrative Expense Claim pursuant to 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2) (the "Motion") was served via email and/or Pacer on Simon R. Mayer at simon.mayer.lockelord.com.

　　　　　　　　　　　　　　　　　　　　/s/ H. Brad Parker　　　　　　　　　

　　　　　　　　　　　　　　　　　　　　H. Brad Parker

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER |
| | § | |
| SEADRILL PARTNERS, LLC, et al | § | 20-35740-H2-11 |
| | § | |
| REORGANIZED DEBTORS | § | CHAPTER 11 |
| | § | (Jointly Administered) |

## AFFIDAVIT

THE STATE OF LOUISIANA §
  §
PARISH OF Acadia §

BEFORE ME, the undersigned authority, on this day personally appeared Rudy Fogleman, who after being by me first duly sworn, stated upon his oath as follows:

1. My name is Rudy Fogleman. I am the President of CleanBlast, LLC, located at 22154 Crowley/Eunice Hwy., Crowley, Louisiana 70526. I am above the age of 18 and fully competent to make this affidavit. I have personal knowledge of ever fact contained in this affidavit. ClearBlast, LLC is the Claimant/Movant in the attached Motion for Allowance of Administrative Expense Claim pursuant to 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2) (the "Motion") and also a Creditor/Claimant in this Bankruptcy Case.

2. I have reviewed the Motion for Allowance of Administrative Expense Claim pursuant to 11 U.S.C. §§503(b)(1)(A), 503(b)(9) and 507(a)(2) (the "Motion") filed herewith.

3. The statements contained in the Response are within my personal knowledge and true and correct.

_____
Rudy Fogleman

Subscribed and sworn to before me on this 18th day of February, 2022.

_____
Notary Public, State of Louisiana

Tammy M. Miller
Notary Public
Louisiana-Acadia Parish-#067381