IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re:<br><br>J.C. PENNEY COMPANY, INC., *et al.*[1]<br><br>DEBTORS | Chapter 11<br><br>Case No. 20-20182<br><br>Jointly Administered |

UNITED STATES TRUSTEE'S MOTION FOR RELIEF FROM
JUDGMENT OR ORDER PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 60(b)(6) AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9024 APPROVING ANY JACKSON WALKER APPLICATIONS
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Kevin Epstein, United States Trustee for Region 7 ("United States Trustee"), moves for relief under Rule 60(b)(6) from any orders approving any applications for compensation and reimbursement of expenses filed by Jackson Walker LLP ("Jackson Walker") because compelling reasons justify relief.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://cases.primeclerk.com/JCPenney. The location of Debtor J. C. Penney Company, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Plano, Texas 75024.

1

## I. PRELIMINARY STATEMENT

1. Disclosure and transparency are paramount to the integrity of the bankruptcy system. The Bankruptcy Code grants courts extraordinary powers to modify relations between debtors and their creditors to address a debtor's financial distress, and Congress passed the Bankruptcy Code pursuant to its constitutional powers to establish "Laws on the subject of Bankruptcies." U.S. CONST. art. I, § 8, cl. 4; 11 U.S.C. § 101, *et seq*. Because of these sweeping powers affecting a multiplicity of interests,[2] both the Bankruptcy Code and the Bankruptcy Rules command transparency by imposing multiple disclosure obligations on debtors and their professionals.

2. The bankruptcy system was significantly compromised in this and other bankruptcy cases by an undisclosed intimate relationship between Judge David R. Jones and Elizabeth Freeman ("Judge Jones" and "Ms. Freeman," respectively)—a partner (now former) at Jackson Walker. Judge Jones's secret relationship with Ms. Freeman created an unlevel "playing field" for every party in interest in every case Jackson Walker had before Judge Jones, including this one, and in Jackson Walker cases mediated by Judge Jones. In this case, Jackson Walker was employed as debtors' counsel with court approval and later awarded compensation and expenses for the services rendered that Judge Jones approved.

3. Judge Jones resigned after the Fifth Circuit filed a formal ethics complaint against him on October 13, 2023, that alleged he was in a long-term intimate relationship—and had lived for years—with Ms. Freeman while she was a partner at Jackson Walker. Ethics Complaint,

---

[2] These interests include debtors, employees, contract counterparties, equity investors, and a broad swath of creditors, including pensioners and pension funds, landlords, vendors, bondholders, banks, and governments at every level, among others.

2

attached as Exhibit 1.[3]  "Judge Jones did not recuse in Jackson Walker LLP cases nor did he disclose his relationship with Elizabeth Freeman to the parties or their counsel in which Jackson Walker LLP appeared before him."  Ethics Complaint, p.2.  That relationship became publicly known when reported by Business Insider on October 6, 2023, and confirmed by Judge Jones the next day to the Wall Street Journal.

4. Bankruptcy Rule 5004(a) provides that a "bankruptcy judge shall be governed by 28 U.S.C. § 455," which mandates disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Bankruptcy Rule 5004(a) further provides that a "bankruptcy judge shall be . . . disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance[] arises."  In addition, Rule 5004(b) specifically rendered Judge Jones disqualified from awarding compensation "to a person . . . with whom the judge is so connected as to render it improper for the judge to authorize such compensation."

5. Because of Judge Jones's failure to recuse himself from presiding over cases where Jackson Walker was counsel for the debtors-in-possession while Ms. Freeman was both living with him and a partner at Jackson Walker, all orders awarding fees and expenses are tainted and should be set aside under Rule 60(b)(6) because this new information revealing a compromised process is a "reason that justifies relief."  Vacating all orders granting fees and expenses in this case would allow parties in interest, including the United States Trustee, to object to, and to seek

---

[3] *Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Complaint No. 05-24-9002 (5th Cir. Oct. 13, 2023).  Under Canon 3 of the Code of Judicial Conduct and its Commentary, cohabiting intimate relationships are treated as spousal relationships.

Although the Ethics Complaint said that Ms. Freeman was a partner in Jackson Walker "from at least 2017," the United States Trustee does not have confirmation of the date she joined the firm.  A recent news story stated that she joined Jackson Walker in 2018.  Alexander Gladstone & Akiko Matsuda, *Texas Law Firm Didn't Disclose Possible Conflict Involving Bankruptcy Judge*, Wall Street Journal Pro, Oct. 27, 2023, attached as Exhibit 2.

3

the return of, fees and expenses awarded to Jackson Walker under that tainted process. Judge Jones presided over at least 26 cases, and perhaps more, where he awarded Jackson Walker approximately $13 million in compensation and expenses while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship. This includes approximately $1 million in fees billed by Ms. Freeman herself in 17 of those cases. *See infra* ¶¶ 39–41.

## II. LEGAL FRAMEWORK

6. Upon the filing of a chapter 11 petition, the debtor becomes a debtor-in-possession ("DIP") with fiduciary duties to its creditors. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 271 (5th Cir. 2015) (citing 11 U.S.C. §§ 1101, 1106–08); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S. Ct. 1986, 1994 (1985)). All of the DIP's interests in property or other rights become part of the bankruptcy estate, 11 U.S.C. § 541, and creditors have certain legal rights to be paid from those estate assets once a plan of reorganization is confirmed or sometimes earlier for creditors having a lien or other security interest. A DIP may continue to do business using estate assets but must seek court approval for any actions that fall outside the scope of ordinary business activities. 11 U.S.C. § 363. Lawyers representing DIPs must have their employment approved by the bankruptcy court and must satisfy a host of obligations, including requirements to disclose all "connections" and to satisfy ethics standards, among others, prohibiting conflicts of interest. 11 U.S.C. §§ 101(14), 327; Fed. R. Bankr. P. 2014. Once employed, a DIP's lawyers' reasonable and necessary compensation may be paid from the estate after counsel files a detailed application disclosing the work done and by whom along with their hours and fees billed; the court approves applications on an interim basis during the case, 11 U.S.C. § 331, and on a final basis at the case's conclusion. 11 U.S.C. § 330. Because compensation for DIP lawyers is afforded priority of payment as an administrative

expense from the estate, every dollar of lawyer compensation is paid before any recovery to creditors and may reduce the creditors' recoveries in the case. *See* § 11 U.S.C. § 503(b)(2).

### III.  STATEMENT OF FACTS

**A.   Relevant Actors**

7.  Elizabeth Freeman is a licensed Texas attorney residing in the State of Texas. Ms. Freeman was previously a partner at Jackson Walker and currently practices with the firm she founded, The Law Office of Liz Freeman, PLLC.

8.  Jackson Walker is a law firm with multiple offices in the State of Texas.

9.  In 2011, the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit") appointed Judge Jones as a bankruptcy judge for the Southern District of Texas. *See* 28 U.S.C. § 152(a)(1), (2).

**B.   Judge Jones Creates the Complex Case Pool that No Longer Randomly Assigns Mega-Cases to All SDTX Bankruptcy Judges**

10.  In 2016, while Judge Jones was Chief Judge, he signed several orders reallocating cases and allowing chapter 11 cases designated as complex to be assigned only to him and Judge Isgur on the newly created complex case panel. *See* General Order 2016-1 (March 3, 2016) (first in a series of three orders to establish complex case panel and reallocate cases); General Order 2018-1, Order Regarding Complex Case Assignment (Jan. 29, 2018).[4]

11.  As of January 1, 2023, Judge Lopez replaced Judge Isgur on the complex case panel.

---

[4] The complex panel assignment rules have been widely criticized by those concerned about the effects of "judge-shopping" when cases are not randomly assigned to all judges within a district. Adam J. Levitin, *Judge Shopping in Chapter 11 Bankruptcy*, 323 UNIV. OF ILL. L. REV. 351 (2023). "[J]udge shopping has undermined the systemic integrity of . . . chapter 11," and "signals to creditors that the debtor believes the judge is biased in its favor . . . even without any actual judicial bias. . . ." *Id.* at 354–55.

5

12. Judge Isgur rejoined the panel on October 13, 2023, upon Judge Jones's withdrawal from the panel. *Infra* ¶ 34.

**C.    Jackson Walker's and Ms. Freeman's Practice Before Judge Jones**

13. Ms. Freeman is a former law clerk to Judge Jones and was a partner at Jackson Walker "from at least 2017 until December 2022." Ethics Complaint, p.1. Jackson Walker has regularly appeared in cases before Judge Jones since Ms. Freeman joined the firm sometime in 2017 or 2018, including cases on which Ms. Freeman worked and billed fees. *Id.* at 2; *see also supra* n.3.

14. Ms. Freeman left Jackson Walker in December 2022 and opened her own practice, The Law Office of Liz Freeman, PLLC. *Id.* at 1–2.

15. While Ms. Freeman was a partner at Jackson Walker, the firm also represented parties in cases mediated by Judge Jones, and Ms. Freeman worked and billed on many of those cases, as well.

16. Jackson Walker has also retained and billed for Ms. Freeman as a contract attorney since she resigned from Jackson Walker. *E.g.*, *In re GWG Holdings, Inc.,* No. 22-90032, ECF No. 2246 (Oct. 25, 2023) (U.S. Trustee's Emergency Motion to Continue Hearing on Jackson Walker's Final Fee Application). In *GWG*, Jackson Walker moved to have Judge Jones appointed as mediator the month before Ms. Freeman resigned Jackson Walker, *id.* at ECF No. 1128 (Debtors' Motion Nov. 30, 2022), and Ms. Freeman appeared at the mediation. As a result of the mediation, Ms. Freeman was appointed as the trustee for the post-confirmation Wind Down Trust.

**D.    The *McDermott* Case and *Pro Se* Litigant's 2021 Adversary Proceeding**

17. An intimate relationship between Judge Jones and Ms. Freeman was alleged in March 2021 in an adversary proceeding in the case of *In re McDermott Int'l, Inc.*, No. 20-30336 (Bankr. S.D. Tex.), in which Jackson Walker was debtor's counsel. In the adversary proceeding,

6

a *pro se* plaintiff moved to recuse Judge Jones on July 23, 2020. *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, Adv. No. 20-3309, (Bankr. S.D. Tex.), ECF No. 4 (July 23, 2020) ("*Van Deelen*" or "adversary proceeding").

18. Jackson Walker represented the individual director and officer defendants in the adversary proceeding. *Infra* ¶ 27.

19. That recusal motion, as originally filed, did not raise the relationship between Judge Jones and Ms. Freeman as a basis for recusal. *See Van Deelen*, ECF No. 4.

20. Almost eight months later and two days before the scheduled March 10, 2021, hearing, the *pro se* plaintiff filed an "Addendum to Plaintiff's Motion . . . to Disqualify Bankruptcy Court Judge David Jones . . . ." ("Plaintiff's Addendum"). *Van Deelen*, ECF No. 39 (filed Mar. 8, 2021, entered Mar. 9, 2021).

21. Plaintiff's Addendum included an anonymous letter the *pro se* plaintiff said that he had received just days before accusing Judge Jones of "corruption." *Van Deelen v. Dickson* (*In re McDermott Int'l Inc.*), No. 4:21-cv-3369 (S.D. Tex.), ECF No. 33 at 37–38 (Jan. 9, 2023) (Order on Appeal Affirming Dismissal of the Adversary Proceeding and Denial of Motion to Recuse).[5] The allegations in the letter related to an intimate relationship between Judge Jones and Ms. Freeman. *Infra* ¶¶ 30–31.

22. On March 9, 2021, Judge Jones contacted Judge Isgur and asked Judge Isgur to reassign the recusal motion to another judge; Judge Isgur entered an order that he would hear the motion to recuse. *Van Deelen*, ECF No. 40 (Mar. 9, 2021).

---

[5] "Appellant claims to have received an anonymous letter that accused Judge Jones of corruption... He filed a copy of that letter along with the addendum to his motion to disqualify Judge Jones. (Adv. No. 20-3309, Doc. No. 39)." The matter is now pending before the U.S. Court of Appeals for the Fifth Circuit. *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, No. 23-20436 (appeal docketed Sep. 11, 2023).

7

23. Judge Isgur also *sua sponte* ordered that "[t]he document filed at ECF No. 39 is sealed, pending the Court's determination of whether there is credible, admissible evidence in support of the allegations . . . ." *Id*. That document remains under seal.

24. Judge Isgur denied the motion to recuse on March 10. *Van Deelen*, ECF No. 42 (Mar. 10, 2021).

25. Audio recording of the March 10 hearing reveals that the *pro se* plaintiff was unable to authenticate the anonymous letter or establish that it was not hearsay, and Judge Isgur did not admit the letter into evidence. *Van Deelen*, ECF No. 47, 5:10–9:55 (Mar. 10, 2021). Judge Isgur also refused the plaintiff's request for a continuance so that he could take depositions regarding the contents of the letter. *Id.* Thus, Judge Isgur found there was no admissible evidence to substantiate the allegations in the anonymous letter. *See id.*

26. The United States Trustee was not a party to the adversary proceeding.

27. The docket also reflects that on March 8, 2021, Jackson Walker moved to file documents under seal, stating that it had received increasingly "antagonistic communications" from the *pro se* plaintiff that Jackson Walker alleged contained "defamatory statements."[6] *Van Deelen*, ECF No. 36 (Mar. 8, 2021).

28. The clerk of court received and sealed the Jackson Walker documents, referred them to chambers for consideration, and maintained them under seal while the motion to seal was pending. *Van Deelen*, ECF No. 37 (Mar. 8, 2021).

29. Six months later, Judge Jones granted the relief sought in Jackson Walker's motion to seal: "Except upon further order of the Court after notice to the Defendants, the Van Deelen

---

[6] To the extent Jackson Walker was referring to the anonymous letter's allegations included in the Plaintiff's Addendum of a relationship between its partner Ms. Freeman and Judge Jones, Jackson Walker never corrected that statement on the record, not even after Jackson Walker admitted it knew of the intimate relationship as early as March 2021. *See supra* n.3.

8

Communications shall remain under seal, and shall not be made available to anyone without order of the Court including in response to any Freedom of Information Act requests." *Van Deelen*, ECF No. 78, ¶ 2. (Sep. 8, 2021). Those documents remain under seal.

E.  **The *Pro Se* Litigant From the *McDermott* Case Sues Judge Jones in District Court**

30. On October 4, 2023, the same *pro se* litigant sued Judge Jones in the United States District Court for the Southern District of Texas for his conduct in the *McDermott* case. *Van Deelen v. Jones*, No. 23-cv-03729, ECF No. 1 (S.D. Tex. Oct. 4, 2023) ("*Van Deelen v. Jones*"). Attached to that complaint as Exhibit A1 was a copy of the anonymous letter that the plaintiff says he received on March 6, 2021, notifying him of the relationship between Judge Jones and Ms. Freeman. *Id.* at ¶ 8 and Exhibit A1.[7]

F.  **Judge Jones First Publicly Denies and Then Admits the Personal Relationship**

31. Reporters for the digital media company, Business Insider, obtained a copy of the District Court Complaint against Judge Jones from the plaintiff. Dakin Campbell & Nicole Einbinder, *Lawsuit Alleges Undisclosed Relationship Involving Federal Judge that Could Cloud Corizon Bankruptcy Deal*, Business Insider, Oct. 6, 2023, attached as Exhibit 3. Business Insider, for the first time, made public the allegation in the sealed document in the adversary proceeding that Judge Jones and Ms. Freeman were in a romantic relationship and had been living together for years.

32. According to Business Insider, Judge Jones denied the relationship, *id.*, but the following day, Judge Jones confirmed the relationship to the Wall Street Journal, acknowledging he is and has been in a relationship and has shared a home for years with Ms. Freeman. Alexander

---

[7] The complaint was unavailable on the docket as of October 6. On October 23, 2023, the court entered an order sealing the document for "purposes of judicial security." *Van Deelen v. Jones*, ECF No. 4 (Oct. 23, 2023). Because of that sealing order, the United States Trustee does not attach the complaint to this Motion.

9

Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023, attached as Exhibit 4. Judge Jones denied that he had any duty to recuse or to disclose because he was not married to Ms. Freeman and was entitled to his privacy. *Id.*

**G.    The Fifth Circuit Investigation and Ethics Complaint**

33.    On October 13, Judge Jones announced from the bench that he was under investigation by the Fifth Circuit, had been asked to step down from the complex case panel pending the investigation, and would do so effective immediately.  Dietrich Knauth, *Top US Bankruptcy Judge, Under Ethics Review, Steps Back from Major Cases,* Reuters, Oct. 13, 2023, attached as Exhibit 5.

34.    The Bankruptcy Court then entered General Order 2023-10, which removed Judge Jones from the complex case panel and reassigned his existing complex cases to Judges Lopez and Isgur.  *See* General Order 2023-10, Order Designating Complex Case Panel (Oct. 13, 2023).

35.    Later on October 13, the Chief Judge of the Fifth Circuit filed the Ethics Complaint against Judge Jones, finding "probable cause to believe that misconduct by Judge Jones has occurred."  Ethics Complaint, p.1.  According to the Ethics Complaint, "Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017." *Id.*  Judge Jones approved substantial legal fees and expenses payable to Jackson Walker that in some cases included fees attributable to Ms. Freeman. *Id.* at 2.  The Ethics Complaint states that there is a "reasonable probability" that Ms. Freeman substantially benefitted or had an interest in the substantial fees Judge Jones approved. *Id.*

36.    The Ethics Complaint also stated that "[o]n information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms.

10

Freeman or that they were cohabiting." *Id.* at 2. The Fifth Circuit Ethics Complaint further stated that "on information and belief, Judge Jones did not apprise that district court judge [who heard the appeal from the denial of the recusal motion and dismissal of the adversary proceeding] of the relationship with Ms. Freeman, and that judge was also unaware of the facts regarding the relationship." *Id.* at 2.

### H. Judge Jones Resigns and the Bankruptcy Court Reassigns His Cases

37. After the Fifth Circuit publicly filed the Ethics Complaint, Judge Jones submitted his resignation on October 15 to be effective on November 15.

38. On October 16, the Bankruptcy Court issued an order reassigning all of Judge Jones's remaining cases (those without a complex case designation) and revising divisional assignments among the remaining judges. General Order 2023-11 (Oct. 16, 2023).

### I. Cases Affected by Judge Jones's Failure to Recuse and Jackson Walker's and Ms. Freeman's Breach of Their Duties

39. Judge Jones presided over at least 26 cases, and perhaps more, where he awarded Jackson Walker approximately $13 million in compensation and expenses under 11 U.S.C. § 330 and § 331 while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship. This includes approximately $1 million in fees billed by Ms. Freeman herself in 17 of those cases. Attached as Exhibit 6A–B is a list that the United States Trustee has compiled of affected cases where Judge Jones presided over proceedings awarding Jackson Walker compensation.[8] The United States Trustee reserves his right to amend this list as he continues his investigation.

---

[8] Sometimes court orders and at other times Jackson Walker applications in the affected cases were inconsistent in complying with section 330's requirements for approving fees and expenses on a final basis. Section 330 requires that counsel file a *final* application for compensation and reimbursement of expenses at the conclusion of a case that covers all fees and expenses for the duration of case, from the petition date to the plan's effective date. But counsel also "may apply to the court not more than once every 120 days . . . for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under

11

40. Judge Jones also presided over three additional cases filed in 2017—which may be affected cases depending on the date Ms. Freeman joined the Jackson Walker partnership—potentially implicating an additional $850,000 in fees and expenses awarded to Jackson Walker. *See supra* n.3. One case closed on September 29, 2017, with a Jackson Walker fee award on August 22, 2017. The other two had final fee awards for Jackson Walker in 2018, with final decrees closing one case on August 2, 2018, and another on March 31, 2021. *See Ameriforge Grp., Inc.,* No. 17-32660 (filed Apr. 30, 2017, Bankr. S.D.Tex.); *Seadrill Ltd.*, No. 17-60079 (filed Jul. 31, 2017, Bankr. S.D. Tex.); *Expro Holdings US, Inc*., No. 17-60179 (filed Dec. 18, 2017, Bankr. S.D. Tex.). These three cases are not included on Exhibit 6B.

41. In addition to the Jackson Walker cases over which Judge Jones presided, he mediated six cases where Jackson Walker was debtor's counsel while Ms. Freeman was either a Jackson Walker partner or contract attorney (as of 2023). The impact on those cases remains under review.[9] Exhibit 6C–D.

42. This case is an affected case included in Exhibit 6.

43. Notwithstanding Jackson Walker's admitted knowledge of the secret relationship between its partner, Ms. Freeman, and Judge Jones no later than March 2021, *see* Exhibit 2 and

---

section 330 of this title," 11 U.S.C. § 331, which is commonly called an *interim* application. In some cases, the court awarded Jackson Walker fees and expenses at the conclusion of a case on an allegedly "final" basis, but the actual order approved fees and expenses for the final interim period and did not necessarily order the award of fees and expenses for the entire case on a final basis as required by section 330. *See, e.g., In re Strike, LLC*, No. 21-90054, ECF No. 1248 (Aug. 18, 2022, Bankr. S.D. Tex.) ("Final Order Allowing Compensation and Reimbursement of Expenses). In an abundance of caution, the United States Trustee seeks to vacate and set aside all orders awarding fees and expenses to Jackson Walker, both interim and final, in this case to avoid any doubt.

[9] There is also at least one case that does not appear to implicate Jackson Walker or any compensation paid under section 330 but that has been tainted by the undisclosed relationship between Judge Jones and Ms. Freeman. *In re Tehum Health Servs., Inc., f/k/a/ Corizon Health, Inc.*, No. 23-90086 (Bankr. S.D. Tex.). In that case, Judge Jones mediated the settlement of the estate's fraudulent conveyance claims against several litigation targets, including Ms. Freeman's client, who received the debtor's most valuable assets pre-petition while the debtor was saddled with most of the liabilities in a divisional merger. *See* Exhibit 3. The United States Trustee objected to the Disclosure Statement based, in part, on the tainted settlement underlying the proposed plan.

*supra* n.3,[10] Jackson Walker never disclosed that relationship in any pending or subsequently filed case during the following 21 months while Ms. Freeman was a partner—or thereafter when she was working as a Jackson Walker contract attorney on bankruptcy cases after leaving Jackson Walker.

## IV. LAW AND ARGUMENT

**A. Bankruptcy Rule 5004 and 28 U.S.C. § 455 Disqualified Judge Jones from Presiding Over Jackson Walker Fee Applications and From Awarding Compensation When His Close Connection with Ms. Freeman Made it Improper.**

44. "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arise[] . . . ." Fed. R. Bankr. P. 5004(a). Section 455(a) mandates disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Similarly, Rule 5004(b) bars a bankruptcy judge from awarding compensation "to a person who is a relative of the bankruptcy judge or with **whom the judge is so connected as to render it improper for the judge to authorize such compensation**." Fed. R. Bankr. P. 5004(b) (emphasis added).

45. Due to the intimate, cohabiting relationship between Judge Jones and Ms. Freeman, Ms. Freeman and Jackson Walker were so connected to Judge Jones "as to render it improper" for Judge Jones to have presided over or approved any Jackson Walker fee application, including those with fees billed by Ms. Freeman herself. Under the plain terms of Rule 5004, Judge Jones was not qualified to enter an order granting fees and expenses to Jackson Walker and Ms. Freeman.

---

[10] "Jackson Walker told the Journal earlier this month that the firm in March 2021 first learned of an allegation that Freeman was in a relationship with Jones. Jackson Walker declined to comment on when it verified that the relationship was real . . . ."

13

46. Not only was Judge Jones's failure to recuse a violation of Rule 5004, it also violated 28 U.S.C. § 455(a), which mandates disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." In similar circumstances, a judge presiding over bankruptcy proceedings when his fiancé worked as a lawyer at the trustee's counsel's firm required the judge to have recused. *See, e.g.*, *Clark v. Kapila*, 612 B.R. 808, 816 (S.D. Fla. 2019) (vacating the final judgment in an adversary proceeding where bankruptcy judge failed to recuse when his fiancé was employed by a party's counsel). In *Clark*, the court ruled that the bankruptcy judge who presided over an adversary proceeding brought by a chapter 7 case trustee abused his discretion by failing to recuse himself when his fiancé was employed by trustee's counsel. *Id.*

47. The same recusal analysis applies to live-in romantic partners; relationships with both fiancés and cohabiting intimate partners are treated as spousal relationships. *See Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel, ABA Comm. On Ethics & Pro. Resp.*, Formal Op. 494 (July 9, 2020) ("Lawyers who cohabit in an intimate relationship should be treated similarly to married couples for conflicts purposes. The same is true for couples who are engaged to be married or in exclusive intimate relationships."); Code of Conduct for United States Judges, Canon 3C Commentary (effective Mar. 12, 2019) ("Recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship").

**B. Jackson Walker and Ms. Freeman Each Breached Their Fiduciary Duty to the Estate and the Texas Disciplinary Rules of Professional Conduct by Failing to Seek Judge Jones's Recusal.**

48. Section 455(a) of title 28 and Rule 5004 are directed to a judge's conduct. Nevertheless, Ms. Freeman and Jackson Walker had an independent duty—both fiduciary and otherwise—to abide by the law governing the proper conduct of bankruptcy cases. "It is

14

undisputed that counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court." *ICM Notes Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 123 (S.D. Tex. 2002). Although the precise scope and extent of a debtor-in-possession's counsel's fiduciary duty is subject to some debate, including within bankruptcy courts in the Fifth Circuit, counsel for the debtor-in-possession owes a general fiduciary duty to the estate and to creditors but not to any creditor specifically. *Id*. Jackson Walker's failure to disclose or to seek recusal of Judge Jones is a breach of Jackson Walker's fiduciary duty to the estate and to the creditor body at large and a less than faithful execution of its duties as counsel to the debtor-in-possession.

49. Moreover, Rule 8.04(6) of the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT states that "a lawyer shall not knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." But Jackson Walker and Ms. Freeman did precisely that. There are a host of other professional conduct rules also implicated by Jackson Walker's and Ms. Freeman's actions. *See* TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, Rules 3.04 (Fairness in Adjudicatory Proceedings), 3.05 (Maintaining Impartiality of Tribunal), 4.01 (Truthfulness in Statements to Others), 5.01 (Responsibilities of a Partner or Supervisory Lawyer), and 8.01 (maintaining the integrity of the profession).

50. In bankruptcy cases, with a multiplicity of interests competing for limited assets, it is beyond question that proceedings not just be right but also appear right. Disclosure and transparency are critical to the integrity of every bankruptcy proceeding, where creditors are required to sacrifice significant rights to rehabilitate debtors and where confidence in the fairness of the proceeding is of paramount public importance.[11] Jackson Walker's misconduct in this and

---

[11] "The one thing I demand more than anything is transparency . . . . And I do that for a number of reasons. Folks who hire the lawyers of the caliber that are in this courtroom, they have somewhere to go they can ask questions about the

other bankruptcy cases risks the public's confidence in the integrity that is vital to the very legitimacy of the bankruptcy process.

**C.     This Court Should Vacate and Set Aside All Orders Awarding Jackson Walker Compensation Under Rule 60(b)(6).**

51.    Federal Rule of Civil Procedure Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Bankruptcy Rule 9024 incorporates Civil Rule 60(b) "in cases under the Code."  Fed. R. Bankr. P. 9024.  The United States Trustee's motion to vacate is not premised on mere legal error in the award of fees.  Rather, it is premised on conduct that goes to the fundamental fairness and integrity of the bankruptcy proceeding itself as well as a fundamental deprivation of due process.  The infirmity here is one so foundational as to render the Jackson Walker fee orders ripe for vacatur.

52.    Relief under Rule 60(b)(6) applies to "extraordinary circumstances."  *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *see also Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) ("Rule 60(b)(6) motions will be granted only if extraordinary circumstances are present.") (internal quotation marks and citation omitted).  Rule 60(b)(6) is "'a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances.'"  *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F. 2d 599, 604–05 (5th Cir. 1986)).  The undisclosed

---

process.  The great majority of folks affected by these cases do not.  And it is those people I have a special focus for, and for the guy whose — and I hope I'm not referring to anyone in particular — the guy who runs a small water truck in Oklahoma who isn't gonna get paid on his last three invoices and is gonna run his truck on bare tires or can't afford braces for his daughter, that's the guy who matters most to me when it comes to transparency."  *In re Midstates Petroleum Co.*, No. 16-32237, ECF No. 702, p.69 (Bankr. S.D. Tex. Sep. 30, 2016) (Comments of Judge Jones, Transcript of Sep. 28, 2016, confirmation hearing).

relationship between the judge and a law firm partner appearing before the judge is that unforeseen contingency and that exceptional circumstance.

53. The Supreme Court has held that if "a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (emphasis added).

54. Although the Supreme Court has stated that Rule 60(b)(6) relief is "neither categorically available nor categorically unavailable for all § 455(a) violations," *Liljeberg*, 486 U.S. at 864, it affirmed the Fifth Circuit's decision vacating a judgment under Rule 60(b)(6) because the trial court judge should have been disqualified under section 455(a). *Id.* "We must continuously bear in mind that 'to perform its high function in the best way []justice must satisfy the appearance of justice.'" *Id.* (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)). Consistent with *Liljeberg*, bankruptcy court orders and judgments may be vacated for violations of section 455(a) and Rule 5004. *See, e.g.*, *Clark*, 612 B.R. at 816.

55. The exceptional facts here easily satisfy the *Liljeberg* factors. First, there is no risk of injustice to any *party*, as relief is sought only against Jackson Walker, *counsel*, not a *party*. Instead, permitting the orders approving Jackson Walker's fees and expenses to stand would be unjust to those who are parties to this case. Judge Jones's relationship with Ms. Freeman reasonably leads to questioning his impartiality in this proceeding, and his actions were sufficiently egregious that he was asked to resign from the complex case panel, was subjected to the Fifth Circuit's Ethics Complaint, and voluntarily resigned within a week of his relationship with Ms.

17

Freeman becoming public. At the same time, Jackson Walker and Ms. Freeman failed in their fiduciary duties and professional responsibilities.

56. As for the second and third factors, failure to vacate the fee orders could produce injustice in this and other cases because disclosure and transparency go to the heart of the proper functioning of the bankruptcy system. Allowing the tainted fee orders to stand would send a message that professionals avoid consequences for their misconduct unless they are "caught" in real-time. This would undermine not just the public's *perception* of the legitimacy of the court but the *actual* legitimacy of the court itself. "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Liljeberg*, 486 U.S. at 869–870 (quoting *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 467, 72 S. Ct. 813, 823 (1952) (Frankfurter, J., concurring)). Thus, vacating the fee orders and providing any party in interest, including the United States Trustee, sufficient opportunity to object to Jackson Walker's fees and expenses given the newly discovered evidence bolsters, not undermines, the parties' and public's confidence in the judicial process.

57. Judge Jones's, Ms. Freeman's, and Jackson Walker's actions have injured the Court and cast a cloud on dozens of bankruptcy proceedings. Therefore, these unique and serious circumstances satisfy the *Liljeberg* factors. Rule 60(b)(6) relief should be granted, and the orders vacated.

**WHEREFORE**, the United States Trustee respectfully requests that the Court (i) vacate all orders approving Jackson Walker's fees and expenses; (ii) order that the United States Trustee and all parties in interest have 120 days from entry of this Court's order to object to and seek the denial of and return of all fees and expenses previously awarded to Jackson Walker; and (iii) set a hearing after the objection deadline to consider Jackson Walker's applications for compensation

and reimbursement of expenses and all objections thereto. Vacating all orders approving Jackson Walker's fees and expenses is but a predicate to returning the parties and Jackson Walker to the status quo before the undisclosed relationship between Jackson Walker's partner and Judge Jones was publicly revealed. The United States Trustee also requests that the Court grant such other and further relief as this Court deems just and appropriate.

Date: November 2, 2023

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Millie Aponte Sall*
    Millie Aponte Sall
    Assistant U.S. Trustee
    Tex. Bar No. 01278050/Fed. ID No. 11271
    515 Rusk, Suite 3516
    Houston, Texas 77002
    (713) 718-4650 – Telephone
    (713) 718-4670 – Fax
    Email: millie.sall@usdoj.gov

**CERTIFICATE OF SERVICE**

    I certify that on November 2, 2023 a copy of the foregoing pleading was served on all parties entitled to electronic notice through the Court's CM/ECF system.

*/s/ Millie Aponte Sall*
Millie Aponte Sall

**SCHEDULE OF EXHIBITS**

| No. | Exhibit |
|---|---|
| 1 | *Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Complaint No. 05-24-9002 (5th Cir. Oct. 13, 2023) |
| 2 | Alexander Gladstone & Akiko Matsuda, *Texas Law Firm Didn't Disclose Possible Conflict Involving Bankruptcy Judge*, Wall Street Journal Pro, Oct. 27, 2023 |
| 3 | Dakin Campbell & Nicole Einbinder, *Lawsuit Alleges Undisclosed Relationship Involving Federal Judge that Could Cloud Corizon Bankruptcy Deal*, Business Insider, Oct. 6, 2023 |
| 4 | Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023 |
| 5 | Dietrich Knauth, *Top US Bankruptcy Judge, Under Ethics Review, Steps Back from Major Cases*, Reuters, Oct. 13, 2023 |
| 6 | List of Affected Cases Identified by USTP as of October 31, 2023 |